IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:08cr00136-1 |
| | ) | 1:08cr00136-2 |
| | ) | 1:08cr00275-1 |
| | ) | 1:08cr00275-2 |
| | ) | |
| WILLIAM CARL SOUDER, JR. | ) | |
| MARVIN DEAN CHAMBERS, SR. | ) | |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge

     Before the court is the motion of Defendant William Carl Souder, Jr., to dismiss the two mail fraud indictments against him (Doc. 24), as well as his motion to quash, dismiss, or set aside those indictments as barred by the statute of limitations (Doc. 42).[1]  Pursuant to a motion (Doc. 58), the court allowed Defendant Marvin Dean Chambers, Sr., to join and adopt these motions.[2]

_____

[1]   In a nine-count indictment, filed on April 29, 2008, the Government charged Souder and Chambers with devising or intending to devise a scheme or artifice to defraud in violation of the mail fraud statute, 18 U.S.C. §§ 1341 and 2.  (No. 1:08cr136, Doc. 1.)  In a four-count indictment, filed on July 29, 2008, the Government charged Souder and Chambers with "honest services" mail fraud in violation of 18 U.S.C. §§ 1341 and 2.  (No. 1:08cr275, Doc. 1.)

[2]   For convenience, this opinion will refer to the motions as belonging to Souder.  These motions were filed in case number 1:08cr275 and, unless otherwise designated, all references to the record are to that docket.

Souder argues that the mail fraud indictments violate his rights under the Fifth and Sixth Amendments to the U.S. Constitution. (Doc. 24 at 1.) He contends that the indictments are defective because they omit a necessary element of mail fraud (id. Ex. 1 at 1; Doc. 40 at 4-12; Doc. 51 at 4-9) and do not fairly inform him of the charge (Doc. 24 Ex. 1 at 1). The Government responds that the elements of mail fraud are sufficiently alleged on the face of the indictments (Doc. 32 at 5-9; Doc. 44 at 4-6), that the indictments fairly inform Defendants of the charges (Doc. 32 at 9-10), and that the motion is procedurally defective (Doc. 44 at 2-4).

Souder also moves to dismiss the indictments as barred by the five-year statute of limitations, claiming that he withdrew from the mail fraud scheme more than five years before the grand jury returned the indictments. (Doc. 42 at 1, 2-4; Doc. 52 at 2, 4-8.) The Government responds that (1) the motion is procedurally defective; (2) withdrawal is not a defense to mail fraud; and (3) the evidence adduced at trial will show that Souder did not withdraw from the mail fraud scheme prior to the mailings. (Doc. 45 at 5-8.)

On December 5, 2008, a hearing was held on these motions. For the reasons set forth herein, the motions are denied.

## I.   BACKGROUND

Souder filed the motions to dismiss the indictments pursuant to Federal Rule of Criminal Procedure 12(b). Because these are pre-trial motions, the court must accept as true the Government's version of the facts, as set forth in the indictments. United States v. Thomas, 367 F.3d 194, 197 (4th Cir. 2004) ("To warrant dismissal of the indictment, [the defendant] would need to demonstrate that the allegations therein, even if true, would not state an offense.").

On April 29, 2008, a federal grand jury returned an indictment charging Souder, Chambers, and Alvin Lewis Elliot, Sr., with nine counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 2 (the "Indictment"). (No. 1:08cr136, Doc. 1.) Souder was President of Atlanta Life General Agency, Inc. ("ALGA"), a corporation with its offices in Atlanta. (Id. at 1.) Chambers and Elliot were executive officers of The Most Worshipful Prince Hall Grand Lodge of Free and Accepted Masons of North Carolina and Jurisdiction, Inc. ("Prince Hall Lodge" or the "Lodge"), a fraternal organization with its main offices in Durham County, North Carolina. (Id. at 1-2.) The Indictment alleges that the Defendants, from in or about May 2002 to April 2004, devised and intended to devise a scheme and artifice to defraud the Lodge and its members. (Id. at 2-7.)

3

The alleged scheme and artifice to defraud involved the creation of a life insurance program, known as the "North Carolina Mason Supplemental Benefit Program" (the "Program"), to be offered to Lodge members. (Id. at 2, 3.) The Defendants represented that the Program would provide Lodge members and their families with up to $10,000 in life insurance, while not disclosing that some Lodge members would be insured for $25,000 without their knowledge and consent and that the Lodge would be the beneficiary of this extra $15,000 of insurance. (Id. at 2, 3, 4, 6.) The Defendants presented the Program as voluntary when, in fact, members were insured for extra amounts without their consent and knowledge; further, monies from common Lodge funds, including benevolent funds, were used to pay for the extra insurance premiums without the consent or knowledge of the members. (Id. at 3-4.) At a Lodge meeting, the Indictment charges, the Defendants made numerous misrepresentations and omissions of material fact to induce Lodge members and the members of a sister masonic organization to participate in the Program. (Id. at 4.)

The Defendants allegedly took several other actions as part of this scheme and artifice to defraud. The Government charges that Souder told ALGA agents to prepare insurance applications with the amount and the primary beneficiary sections left blank, to instruct Lodge members to sign the incomplete applications

4

under the representation that they would be the only beneficiary for $10,000 and, only thereafter, to name the Prince Hall Lodge as the primary beneficiary for $15,000 of coverage, all without the knowledge or consent of the Lodge members.  (Id. at 4-5.) The Defendants concealed from the Lodge members the actual insurance policies, including the policy benefit amount, policy number, and beneficiaries, using false and fraudulent Certificates of Insurance (the "Certificates").  (Id. at 5.) Souder directed the creation of the Certificates, which carried a false and fraudulent policy number, listed the insurance amount as $10,000 (when in fact it was $25,000), and omitted that the Lodge was the primary beneficiary.  (Id. at 5, 6.)  The Certificates were sent via U.S. Mail to Lodge members, bearing the signatures of Chambers and Elliot.[3]  (Id. at 5.)  Chambers and Elliot allegedly directed that insurance premiums for policies, including policies on which members had ceased to pay premiums, be paid with benevolence funds belonging to the entire Lodge membership.  (Id. at 6.)  The Indictment charges that these payments, exceeding $200,000, were made without the knowledge, consent, or authority of the Lodge members.  (Id.)

The Indictment also alleges that the Defendants reaped financial benefits from this mail fraud scheme.  Souder received

---

[3]  Counts One through Nine of the Indictment allege that the Defendants mailed these Certificates in execution of the alleged scheme and artifice to defraud on or about June 2, 2003.  (Id. at 7-12.)

Case 1:08-cr-00275-JAB   Document 63   Filed 01/12/09   Page 5 of 24

commission payments based upon the premiums paid by the Lodge at the direction of Chambers and Elliot. (Id.) Chambers and Elliot attempted to claim death benefits for a deceased Lodge member under the Program without the knowledge of the deceased member's family. (Id.) Chambers also personally received direct payments in excess of $6,000 from an insurance agent involved in the Program. (Id. at 7.)

On July 29, 2008, a federal grand jury returned an indictment charging Souder, Chambers, Elliot, and John Henry Wilcher with four counts of mail fraud in violation of 18 U.S.C. §§ 1341, 1346, and 2 ("Second Indictment"). (No. 1:08cr275, Doc. 1 at 9-12.) Although the Second Indictment alleges the same scheme and artifice to defraud as alleged in the Indictment, it charges that the Lodge and its members were deprived of the honest services of Chambers and Elliot. (Id. at 3-4.) The Second Indictment also adds Wilcher, an insurance agent under the employ of ALGA, as a defendant. (Id. at 2.) Counts One through Four of the Second Indictment contain allegations of specific August 2003 mailings of premium payments for the Program in furtherance of the scheme and artifice to defraud. (Id. at 9-12.)

On the motions of the Government, and absent any objection by the Defendants (No. 1:08cr136, Doc. 34; No. 1:08cr275, Doc.

22), the two cases have been joined for discovery and trial (No. 1:08cr136, Doc. 41; No. 1:08cr275, Doc. 36).

## II. ANALYSIS

Souder filed two motions to dismiss in this action. First, Souder moves to dismiss the indictments as defective in violation of his rights under the Fifth and Sixth Amendments to the U.S. Constitution. (Doc. 24 at 1.) Second, Souder moves to dismiss the indictments as barred by the statute of limitations.[4] (Doc. 42 at 1.) The motions are addressed in turn.

### A. Motion to Dismiss the Indictments as Defective

An indictment must afford defendants their constitutional guarantees under the Fifth and Sixth Amendments.[5] <u>United States v. Daniels</u>, 973 F.2d 272, 274 (4th Cir. 1992) (citing Russell v. United States, 369 U.S. 749, 760-64 (1962)). The Fifth Amendment guarantees that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend.

---

[4]  Souder labeled this motion as a "Motion to Quash, Dismiss or Set Aside Indictment Prosecution Barred by Statute of Limitations." (Doc. 42.) However, Federal Rule of Criminal Procedure 12 no longer allows the filing of motions to quash. "This rule abolishes pleas to the jurisdiction, pleas in abatement, demurrers, special pleas at bar, and *motions to quash*. A motion to dismiss or for other appropriate relief is substituted for the purpose of raising all defenses and objections heretofore interposed in any of the foregoing modes." Fed. R. Crim. P. 12(a) advisory committee's note (emphasis added). Thus, this motion will be treated as a motion to dismiss.

[5]  Federal Rule of Criminal Procedure 7(c)(1) also requires an indictment to have "a plain, concise, and definite written statement of the essential facts constituting the offense charged."

V.    The Sixth Amendment guarantees the right of the accused "to be informed of the nature and cause of the accusation."    U.S. Const. amend. VI.

An indictment passes constitutional muster if it (1) "contains the elements of the offense charged," (2) "fairly informs the defendant of the charge," and (3) "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."    Hamling v. United States, 418 U.S. 87, 117 (1974); accord United States v. Smith, 441 F.3d 254, 260-61 (4th Cir. 2006); Daniels, 973 F.2d at 274.

Souder challenges the indictments under the first two parts of this three-part analysis.    He argues that the indictments omit a necessary element of mail fraud by insufficiently alleging that the Defendants deprived anyone of property or honest services.[6]    (Doc. 24 Ex. 1 at 1; Doc. 40 at 4-12; Doc. 51 at 4-9.)    He also contends that the indictments do not fairly inform him of the charge because they are ambiguous and lack specificity regarding the time of the mail fraud.    (Doc. 24 Ex. 1 at 1.)    The Government responds that (1) the elements of mail fraud are sufficiently alleged on the face of the indictments

---

[6]    Souder concedes that the indictments "sufficiently allege" the second element of the mail fraud offense because they address "the use of mail to deceive the Lodge membership."  (Doc. 40 at 4.)  At this time, Souder has not claimed that the indictments fail to allege the third element sufficiently, that is, the existence of a material statement or omission in furtherance of the scheme.

(Doc. 32 at 5-9; Doc. 44 at 4-6); (2) the motion is procedurally defective under Federal Rule of Criminal Procedure 12(b) because it relies on facts that are beyond the face of the indictments (Doc. 44 at 2-4); and (3) the indictments fairly inform Defendants of the charges (Doc. 32 at 9-10).

### 1. Essential Elements

"Every essential element of an offense must be charged in the body of an indictment."  Daniels, 973 F.2d at 274. "Generally, an indictment is sufficient if it alleges an offense in the words of the statute, assuming those words 'fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence.'"  United States v. Wicks, 187 F.3d 426, 427 (4th Cir. 1999) (quoting Hamling, 418 U.S. at 117).

The elements of mail fraud are (1) the existence of a scheme to defraud, or for obtaining money or property; (2) the use of the mails in furtherance of the scheme; and (3) a material statement or omission in furtherance of the scheme.  18 U.S.C. § 1341; Neder v. United States, 527 U.S. 1, 25 (1999); United States v. Gibbs, 132 F. App'x 502, 503 (4th Cir. 2005) (per curiam).  "[T]he term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services."  18 U.S.C. § 1346.  "[T]he elements of a mail fraud scheme involving the deprivation of

9

honest services [under 18 U.S.C. § 1346] are identical to those of a normal mail fraud prosecution." United States v. Vinyard, 266 F.3d 320, 326 (4th Cir. 2001).

The indictments sufficiently allege the existence of the first element of the mail fraud statute. Specifically, the indictments use the precise words of the statute to allege that the Defendants devised a scheme or artifice to defraud. Although Souder argues that the indictments fail to allege that the Lodge or its members were deprived of property or honest services (Doc. 24 Ex. 1 at 1; Doc. 40 at 4-12; Doc. 51 at 4-9), the term "property" is interpreted broadly and extends to deprivations of some right over that property. Carpenter v. United States, 484 U.S. 19, 26-27 (1987); McNally v. United States, 483 U.S. 350, 356 (1987); United States v. Adler, 186 F.3d 574, 576-77 (4th Cir. 1999). Further, the indictments allege that the extra, undisclosed insurance premiums were paid using "monies from common Prince Hall Lodge funds, including benevolent funds . . ., without the consent or knowledge of the members."[7] (No. 1:08cr136, Doc. 1 at 4; No. 1:08cr275, Doc. 1 at 5.) These "benevolence funds belong[] to the entire Prince Hall Lodge Membership." (No. 1:08cr136, Doc. 1 at 6; No. 1:08cr275,

---

[7]  The Second Indictment alleges that Chambers and Elliot controlled the finances and bank accounts of Prince Hall Lodge (No. 1:08cr275, Doc. 1 at 2) and that all four Defendants caused the payment of these premiums (id. at 9-12).

Doc. 1 at 7.) The Indictment also alleges that Chambers and Elliot, using Lodge funds, paid in excess of $200,000 in insurance premiums (No. 1:08cr136, Doc. 1 at 6); the Second Indictment estimates this amount at over $300,000 (No. 1:08cr275, Doc. 1 at 7-8). The Second Indictment also contains allegations about specific amounts of the insurance premium payments. (No. 1:08cr275, Doc. 1 at 9-12.) Thus, on the face of the indictments, these allegations are sufficient to establish that the Defendants devised a scheme to deprive the Lodge and its members of money, which is covered by the mail fraud statute.

The Second Indictment also sufficiently alleges a deprivation of "honest services." In particular, the Second Indictment alleges that the scheme:

> sought to defraud and deprive the Prince Hall Lodge and its members of the conscientious, loyal, faithful, disinterested, unbiased and honest services of . . . [Chambers and Elliot] in the performance of acts related to their service as elected and salaried employees of Prince Hall Lodge and of the right of the Prince Hall Lodge and its members to have the business of the Prince Hall Lodge conducted honestly, fairly, impartially, free from corruption, collusion, partiality, craft, trickery, undue influence, dishonesty, self-enrichment, bribery, fraud and conflicts of interest.

(Id. at 3-4.) The Second Indictment alleges that Chambers and Elliot "controlled the finances and bank accounts" of the Lodge and "owed the Prince Hall Lodge and it[s] members a duty of

11

honest service in the discharge of their duties[,] including the handling of the monies belonging to the Prince Hall Lodge and its members." (Id. at 2.) The Second Indictment contains several allegations that Chambers and Elliot breached this duty. For example, the Second Indictment alleges that Chambers and Elliot misrepresented the nature of the Program (id. at 4-5), depleted Lodge funds to pay fraudulent insurance premiums (id. at 5, 7-8, 9-12), and concealed the nature and scope of the Program (id. at 6-7). Chambers also allegedly received payments in excess of $6,000 to assist Wilcher "in accessing members of masonic organizations." (Id. at 8.) Thus, on its face, the Second Indictment sufficiently alleges that the Defendants devised a scheme to deprive the Lodge and its members of the honest services of Chambers and Elliot.

At this point, the court need not address the merits of Souder's arguments regarding specific types of property or honest services. Federal Rule of Criminal Procedure 12(b)(2) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine *without a trial of the general issue*." Fed. R. Crim. P. 12(b)(2) (emphasis added). Although Rule 12(b)(2) authorizes courts to rule on motions involving questions of law, courts

will not rule on motions involving questions of fact.[8]  United States v. Wilson, 26 F.3d 142, 159 (D.C. Cir. 1994) (holding that courts should not rule on factual issues that "are substantially founded upon and intertwined with evidence concerning the alleged offense" (internal quotation marks and citation omitted)).

In this case, Souder raised several factual issues that are inextricably intertwined with evidence about the alleged offense.  For example, Souder argues that no deprivation or taking of property exists because these were "split benefit" (or "split dollar") insurance policies under which the alleged victims received legal and valuable coverage (Doc. 40 at 2, 6), the alleged victims did not pay high or inappropriate premiums (id. at 6, 8), the alleged victims received the expected value of the polices (id. at 7, 8), Souder's salary and commission payments were based on these insurance policies and were comparable to the industry norm (id. at 8), the Lodge paid its premiums out of its own funds instead of out of members' property interest (id. at 9-10), and neither the Lodge nor its members suffered a reasonably foreseeable harm (id. at 11-12).

---

[8]  Courts will venture beyond the face of the indictment to decide a pretrial motion on rare occasions.  As discussed in Section II.B.1, infra, several courts have considered undisputed evidence when ruling on pretrial motions because the absence of any dispute effectively renders the motion a question of law.  In this case, however, Souder has not proffered any such evidence to support this particular motion to dismiss.

13

Whether Souder may ultimately prevail on these arguments raises questions of fact that will require further exploration at trial.

### 2. Fairly Inform of Charges

An indictment generally need not demonstrate "strict chronological specificity or accuracy," United States v. Kimberlin, 18 F.3d 1156, 1159 (4th Cir. 1994), unless (1) time is a substantive element of the offense; (2) the actual date of the offense implicates the statute of limitations; or (3) the actual date of the offense follows the indictment. Smith, 441 F.3d at 261; Kimberlin, 18 F.3d at 1159; United States v. Brewer, 1 F.3d 1430, 1437 (4th Cir. 1993). To prevail under this rule against variance, a defendant must demonstrate prejudice. Brewer, 1 F.3d at 1437.

In this case, Souder contends that the indictments should be dismissed because they do not fairly inform him of the charge. (Doc. 24 Ex. 1 at 1.) He complains that the indictments repeatedly use the phrase "at all times material." (Id.) Souder states that this phrase is ambiguous and lacks specificity regarding the time of the mail fraud. (Id.)

The indictments fairly inform the Defendants of the time of the scheme and the individual mailings. Although the

indictments occasionally use the phrase "at all times material,"[9] this phrase is used in the context of the indictments as a whole, which allege a general time frame for the mail fraud scheme "[f]rom in or about May 2002, continuing up to and including April 2004" (No. 1:08cr136, Doc. 1 at 2; No. 1:08cr275, Doc. 1 at 2) and specific dates for each individual mailing (No. 1:08cr136, Doc. 1 at 7-12; No. 1:08cr275, Doc. 1 at 9-11). Furthermore, "strict chronological specificity or accuracy" is not required for these indictments. As mentioned above, time is not a substantive element of the mail fraud offense. The actual dates of the mail fraud also occurred within the limitations period, even though Souder has filed a separate motion challenging the statute of limitations based on his alleged withdrawal from the mail fraud scheme. The actual dates of the separate offenses also precede the dates of the indictments by several years. Thus, Souder has not suffered any prejudice merely because the indictments include the phrase "at all times material."

**B.   Motion to Dismiss Indictments as Time Barred**

Souder moves to dismiss the indictments as barred by the five-year statute of limitations, pursuant to Federal Rule of

---

[9]   The Government also uses the substantially similar phrases "[a]t all times material" (No. 1:08cr275, Doc. 1 at 2), "[a]t all times herein material" (No. 1:08cr136, Doc. 1 at 1, 2; No. 1:08cr275, Doc. 1 at 1, 2), and "[a]t all times material herein" (No. 1:08cr275, Doc. 1 at 2).

Criminal Procedure 12(b).[10]  (Doc. 42 at 1.)  In particular,
Souder claims that he withdrew from the alleged mail fraud
scheme upon his termination from employment with ALGA on March
6, 2003, which was more than five years before the filing of the
indictments on April 29 and July 29, 2008.  (Doc. 42 at 2, Ex.
1; Doc. 52 at 2, 4, 5, 6-8.)  To support this claim, he has
attached evidence of his termination in the form of a letter
from Atlanta Life Financial Group, Inc. (Doc. 42 Ex. 1) and
other documents that establish his termination date (id. Ex. 2).
Souder also argues that the indictments should be dismissed
because they do not allege a continuing scheme to commit mail
fraud.  (Doc. 52 at 4.)  The Government has not disputed
Souder's letter or attachments as such but responds that (1) the
motion is procedurally defective under Federal Rule of Criminal
Procedure 12(b) because it relies on facts beyond the face of
the indictments; (2) withdrawal is not a defense to mail fraud;
and (3) the evidence to be adduced at trial will show that
Souder did not withdraw from the mail fraud scheme prior to the
mailings.  (Doc. 45 at 5-8.)

---

[10]  The statute of limitations provides that "no person shall be
prosecuted, tried, or punished for any offense, not capital, unless
the indictment is found . . . *within five years* next after such
offense shall have been committed."  18 U.S.C. § 3282(a) (emphasis
added).

Case 1:08-cr-00275-JAB   Document 63   Filed 01/12/09   Page 16 of 24

### 1. Procedural Defect

"There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context." United States v. Yakou, 428 F.3d 241, 246 (D.C. Cir. 2005). Federal Rule of Criminal Procedure 12(b)(2) instead provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue."[11] A court "must decide every pretrial motion before trial unless it finds good cause to defer a ruling." Fed. R. Crim. P. 12(d). Although a court may consider factual issues when disposing of pretrial motions under Rule 12(b), Fed. R. Crim. P. 12(d), a motion "falls within the province of the ultimate finder of fact" if it is "substantially founded upon and intertwined with evidence concerning the alleged offense." Wilson, 26 F.3d at 159 (internal quotation marks and citation omitted); accord United States v. Rosen, 445 F. Supp. 2d 602, 645 (E.D. Va. 2006) (holding that a court may not consider "factual questions embraced in the general issue" when considering a pretrial motion to dismiss the indictment).

No party has identified, nor has this court found, any Fourth Circuit precedent that addresses whether a court may consider *undisputed* evidence when ruling on a pretrial motion to

---

[11] "The general issue has been defined as evidence relevant to the question of guilt or innocence." Yakou, 428 F.3d at 246 (internal quotation marks and citation omitted).

17

dismiss an indictment. But other courts have ruled on this issue in the context of challenges to the sufficiency of the evidence. Several courts have affirmed the pretrial dismissal of an indictment where the material facts were undisputed and the government has not objected to their consideration, concluding that a court may determine as a matter of law whether the government could prove its case beyond a reasonable doubt in light of the undisputed facts. *E.g.*, *United States v. Covington*, 395 U.S. 57, 60-61 (1969); *United States v. Flores*, 404 F.3d 320, 324-25 (5th Cir. 2005); *Yakou*, 428 F.3d at 247; *United States v. Phillips*, 367 F.3d 846, 855 & n.25 (9th Cir. 2004); *United States v. Hall*, 20 F.3d 1084, 1087-88 (10th Cir. 1994); *United States v. Levin*, 973 F.2d 463, 467 (6th Cir. 1992); *United States v. Risk*, 843 F.2d 1059, 1061 (7th Cir. 1988). Other circuits have approved the consideration of facts beyond the face of the indictment where the government has made "a full proffer of the evidence it intends to present at trial," *United States v. Alfonso*, 143 F.3d 772, 776-77 (2d Cir. 1998), or where the parties have stipulated to those facts. *United States v. DeLaurentis*, 230 F.3d 659, 660-61 (3d Cir. 2000). In fact, only one circuit has consistently refused to look beyond the face of the indictment and consider pretrial motions involving undisputed facts. *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) (per curiam).

In this case, the court need not determine which analysis applies to Souder's proffer of undisputed evidence because the proffer fails under all. Under the predominant analysis, Souder cannot establish the second requirement because the Government has objected to the consideration of anything beyond the face of the indictments. (Doc. 45 at 5-6.) Nor has the Government made a full proffer of evidence or stipulated to the record. Under the minority analysis, a court also may not consider any evidence beyond the face of the indictments. Thus, the Government will remain entitled to introduce its evidence at trial and have it tested by a motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. Yakou, 428 F.3d at 247; Salman, 378 F.3d at 1268; DeLaurentis, 230 F.3d at 661.

### 2. Withdrawal

Even if the undisputed evidence is considered, Souder still cannot prevail on the motion to dismiss the indictments as barred by the statute of limitations. Souder claims that he withdrew from the alleged mail fraud scheme almost three months before the first use of the U.S. mails and more than five years before the return of the indictments. (Doc. 42 at 2, Ex. 1; Doc. 52 at 2, 4, 5, 6-8.) Assuming, arguendo, that the withdrawal defense applies to mail fraud (which the court need not decide at this time), Souder has not carried his burden of

introducing prima facie evidence of any affirmative acts of his withdrawal. Furthermore, withdrawal is not a complete defense to mail fraud.

### a.    Validity as a Substantive Defense

The parties have not identified, nor has this court found, any Fourth Circuit case that addresses whether withdrawal is a valid substantive defense to mail fraud.[12]    A few courts have ruled that a party's withdrawal from a mail fraud scheme is not a substantive defense "because membership in the scheme is not an element of the offense."    United States v. Read, 658 F.2d 1225, 1240 (7th Cir. 1981); accord United States v. Waldrop, 786 F. Supp. 1194, 1201 (M.D. Pa. 1991), aff'd, 983 F.2d 1054 (3d Cir. 1992); see also United States v. Philip Morris USA, Inc., 449 F. Supp. 2d 1, 907 n.42 (D.D.C. 2006) (citing Read, 658 F.2d at 1240) (observing that a defendant's "withdrawal from the RICO conspiracy does not preclude its liability under 18 U.S.C. § 1962(c) for the substantive mail and wire fraud offenses that underlie the civil RICO lawsuit").    By contrast, several courts recognize withdrawal as a substantive defense to mail fraud. E.g., United States v. Green River Coal Co., No. 96-5617/96-

---

[12]    The Government argues that withdrawal is a defense only to conspiracy.    (Doc. 45 at 6-7.)    However, the Fourth Circuit has recognized the similarities between conspiracy and mail fraud.    United States v. Grow, 394 F.2d 182, 203 (4th Cir. 1968) ("The nature of proof in a scheme to defraud, involving two or more persons, is analogous to the nature of proof in a conspiracy.").

5618, 1997 U.S. App. LEXIS 3051, at *9 (6th Cir. Feb. 18, 1997);
United States v. Lothian, 976 F.2d 1257, 1263 (9th Cir. 1992);
United States v. Rodgers, 624 F.2d 1303, 1308 n.14 (5th Cir.
1980); United States v. Cohen, 516 F.2d 1358, 1364 (8th Cir.
1975); Glazerman v. United States, 421 F.2d 547, 551-52 (10th
Cir. 1970).

### b. Burden-Shifting Analysis

Courts that recognize withdrawal as a substantive defense
to mail fraud employ a burden-shifting analysis to determine
whether a defendant may avail himself of it. The defendant
bears the initial burden of "introduc[ing] prima facie evidence
of withdrawal from participation in the scheme." Lothian, 976
F.2d at 1263. Once the defendant carries this burden, the
burden shifts to the government to rebut this showing of
withdrawal beyond a reasonable doubt. Id. "To do so, the
government's evidence must be sufficient to support a finding
that the defendant did not withdraw or that each charged use of
the mails or wires was the foreseeable result of actions taken
by the defendant or his co-schemers before the defendant's
withdrawal." Id.

Courts generally require an affirmative act to withdraw
from a mail fraud scheme. Id. at 1263-64; Rodgers, 624 F.2d at
1308 n.14; Cohen, 516 F.2d at 1364; Reisman v. United States,
409 F.2d 789, 793 (9th Cir. 1969). Affirmative acts may include

a showing that the defendant severed all ties to his former company and received no financial benefit from its operations. Lothian, 976 F.2d at 1263-64; Cohen, 516 F.2d at 1364-65. Other courts have required affirmative acts "to disavow or defeat" the fraud. Reisman, 409 F.2d at 793 (holding that defendant had not terminated his liability for mail fraud, even though he had resigned as president and director of the company and had ceased to participate in its day-to-day operations, because "he remained a major stockholder and took no affirmative action to disavow or defeat the promotional activities which he had joined in setting in motion"). In the analogous context of conspiracy, the Fourth Circuit held that "withdrawal . . . requires the defendant to take affirmative actions inconsistent with the object of the conspiracy and communicate his intent to withdraw in a manner likely to reach his accomplices." United States v. Cardwell, 433 F.3d 378, 391 (4th Cir. 2005).

In this case, Souder has not carried his burden of introducing prima facie evidence that he undertook any affirmative act whatsoever to withdraw from the scheme. Although he attached a copy of a March 6, 2003, letter terminating his employment with ALGA, the letter does not show that he severed all ties with ALGA or that he received no financial benefit thereafter. To the contrary, the letter indicates that Souder would continue to receive certain

22

unidentified benefits from a severance package for an unspecified period of time. (Doc. 42 Ex. 1.) The record also does not demonstrate that Souder ceased to participate in the day-to-day business operations related to the alleged mail fraud scheme or that he did not receive any financial benefits from those policies. Souder has also not shown that he took any affirmative action inconsistent with the alleged scheme, notified his alleged co-schemers that he had disavowed their activities, or contacted law enforcement.

Even if Souder had carried his burden, "withdrawal from a fraudulent scheme will not furnish a complete defense where the use of the mails or wires occurring after the withdrawal is the foreseeable result of actions taken by the defendant or co-schemers during the defendant's participation in the scheme." Lothian, 976 F.2d at 1265; accord United States v. United Med. & Surgical Supply Corp., 989 F.2d 1390, 1398 (4th Cir. 1993). The Government has stated that it will present evidence at trial indicating that Souder continued to receive financial benefits from the existing policies, as well as from new policies. (Doc. 45 at 6.) The Government also intends to show that the mail fraud was reasonably foreseeable because Souder had misrepresented the nature and scope of the Program to the Lodge and its members, directed the training of agents to conceal information about the Program, and directed the creation of the

23

false and fraudulent Certificates. (Id. at 6, 8.) Thus, Souder's withdrawal defense is not a basis for dismissal of the indictments.

## III. CONCLUSION

The court has considered all the arguments raised by the motions to dismiss. For the reasons set forth above, the court finds that the indictments sufficiently allege the essential elements of mail fraud, including the deprivation of property and honest services, and fairly inform the Defendants of the timing of the mail fraud scheme. The court also finds that the motion to dismiss the indictments as barred by the statute of limitations is premature and requires further development of the facts at trial. Thus, the motions to dismiss (Docs. 24 and 42) are DENIED.

/s/  Thomas D. Schroeder
United States District Judge

January 12, 2009